UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-20063-TP-MOORE/TORRES

UNITED STATES OF AMERICA,

    Plaintiff,

v.

DARRYL CHARLES PAYNE,

    Defendant.
_____/

**REPORT AND RECOMMENDATION**

    This matter is before the Court on the Superseding Petition for Offender Under Supervision [D.E. 2]. This matter was referred to the undersigned by the Honorable K. Michael Moore, United States District Judge, to take all necessary and proper action as required by law, including but not limited to an evidentiary hearing with respect to whether or not the defendant's supervised release should be revoked [D.E. 8]. Based upon the Findings of Fact set forth below, it is recommended that the defendant's supervised release be revoked.

*I. BACKGROUND*

    Defendant Darryl Payne was sentenced on August 12, 2008 to serve twelve (12) months and one (1) day of imprisonment, followed by three (3) years of supervised release based upon his conviction for transporting an undocumented alien for private

financial gain within the United States by means of a motor vehicle. His term of release began on January 9, 2009.

The pending matter arose after the defendant was arrested and initially appeared in court on May 3, 2011 [D.E. 3] on a Petition seeking revocation of his term of supervised release [S.D. TX 5:08-cr-00318 D.E. 61]. The Superseding Petition sets forth the following four violations:

| Violation Number | Nature of Noncompliance |
|---|---|
| 1. | Violation of Mandatory Condition, by failing to refrain from violation of the law. On February 28, 2011, Miami-Dade County, Florida, the defendant committed the offense Aggravated Battery with a deadly weapon, contrary to Florida Statute 784.045. |
| 2. | Violation of Mandatory Condition, by failing to refrain from violation of law. On February 28, 2011, Miami-Dade County, Florida, the defendant committed the offense Leaving the Scene of a Crash with Injuries, contrary to Florida Statute 316.027. |
| 3. | Violation of Mandatory Condition, by failing to refrain from violation of the law. On February 28, 2011, Miami-Dade County, Florida, the defendant committed the offense Reckless Driving, contrary to Florida Statute 316.192. |
| 4. | Violation of Mandatory Condition, by failing to refrain from violation of the law. On February 28, 2011, Miami-Dade County, Florida, the defendant committed Driving with Knowing License is Suspended, contrary to Florida Statute 322.34. |

On June 15, 2011, an evidentiary hearing was held on the above violations [D.E. 13]. The defendant was present at the evidentiary hearing along with his counsel. The government presented the testimony of Miami Gardens police officer Agnes LaFrance, Miami Gardens police detective Tammy Ferguson, victim-witness Cynthia Morris, and

civilian witness Henry Lewis. The government also introduced into evidence several exhibits. The defendant did not present any affirmative evidence, but relied upon cross-examination of these witnesses to challenge the strength of the government's case. The disputes in this case center on whether the defendant used his vehicle in a manner likely to cause death or great bodily harm, and whether defendant was aware that he left the scene of a crash with injuries.

## II.   FINDINGS OF FACT

It is undisputed that on February 28, 2011, the Defendant was involved in a high-speed car crash between his white Mercury sedan and his wife's mint green Infiniti sports utility vehicle at 183rd Street and Northwest 16th Avenue, in Miami Gardens, Florida. The crash occurred at around 9:20 a.m., as the two vehicles were traveling at rapid speed in a mixed residential area – estimated by a credible witness to be approximately fifty miles per hour, along the westbound lanes of 183rd street, between 16th and 17th Avenues. The Defendant's sedan was traveling in the middle lane, and his wife's SUV was in the lane closest to the center median. At the time, the weather was clear, traffic was intermittent, and there were no visible oil slicks or obstructions along the westbound lanes. The eastbound lanes were clear of traffic.

From the opposite side of the street, Henry Lewis witnessed the sedan following the SUV as the two vehicles rapidly approached. As Mr. Lewis walked eastward along the eastbound sidewalk, he witnessed the Defendant's car pull alongside the SUV and suddenly maneuver towards it the moment before the crash. Mr. Lewis observed that neither car decreased speed during the moments leading up to the accident. Mr. Lewis

noted that the traffic was uncharacteristically mild for the area during a typical weekday morning. He thus credibly explained why he had a good view of the events that morning.

The Defendant's sedan veered into the front passenger side of his wife's SUV, causing her vehicle to crash into the median, flip three times, cross three traffic lanes, and finally come to a rest on a utility road on the opposite side of the highway in front of Mr. Lewis. When the SUV landed, it was positioned right-side up, facing eastward. It suffered extensive damage, and all but one airbag deployed. After the crash, the Defendant continued heading westbound without stopping, breaking, or slowing down at all. He was later apprehended twenty minutes away from the scene.

At 9:27 a.m., Officer Agnes LaFrance was dispatched to respond to the scene of the crash. She arrived at 9:31 a.m., and witnessed fire rescue treating Cynthia Morris at the scene. Officer LaFrance testified that when she arrived Ms. Morris identified the person in the white vehicle as her husband, she said that he was trying to kill her. While Officer LaFrance did not include this statement in her incident report, the report did include statements from Ms. Morris indicating that the Defendant struck her SUV at a high rate of speed to get her attention, and that her purpose for driving that morning was to obtain a protective order against her husband from the police station.

When Detective Tammy Ferguson arrived on the scene at a little after 10 a.m, she witnessed the victim standing outside of the battered SUV, bracing herself against the opened, driver's side door. Detective Ferguson testified that the victim appeared shaken up, and looked to be in pain. Ms. Morris told Detective Ferguson that she and

her husband had gotten into an argument the previous day, and reiterated that she had been on her way to obtain a restraining order against him that morning.

After the Defendant was located and arrested after the crash, and after reading the Defendant his Miranda rights, Detective Ferguson conducted a videotaped interview in which the Defendant claimed that he swerved into his wife's vehicle in order to get her attention. She was still upset with him after finding out about his involvement with another woman during a fight the couple had the previous night. He denied intentionally trying to hurt her.

During the evidentiary hearing, Ms. Morris recanted her initial allegations against her husband, claiming instead that she was simply driving that morning in order to clear her head after they got into an argument the night before. Ms. Morris testified that the argument was not about another woman, but instead concerned her own mental health. According to Ms. Morris, the argument began when her husband tried to talk her out of suicidal thoughts, and spilled over to the following morning, when he followed her car because he was concerned for her safety. Ms. Morris acknowledges that her husband hit her car in order to get her attention, but claims to have been reaching for her cell phone at the time of the accident. Ms. Morris testified that she recalls telling police officers that she had been on her way to the police station that morning to obtain a restraining order against her husband. Ms. Morris's attempts to minimize her husband's actions lacked credibility.

During their testimony, Ms. Morris, Detective Ferguson, and Mr. Lewis identified the photographs of the white Mercury and mint green Infiniti, and Officer

LaFrance identified the photographs of the Infiniti. Additionally, Ms. Morris and Detective Ferguson identified the Defendant during the evidentiary hearing.

### III. ANALYSIS

#### A. *Applicable Standard*

In order to revoke a defendant's supervised release, the Court must find by a preponderance of the evidence that the defendant violated a condition of supervised release. 18 U.S.C. § 3683(e)(3). The reasons for the revocation of the defendant's supervised release and the evidence the court relied upon should be either formalized in written findings or orally announced and recorded or transcribed. *United States v. Copeland*, 20 F. 3d 412, 414 (11th Cir. 1994).

#### B. *The Defendant Committed Aggravated Battery with a Deadly Weapon*

The Court finds and concludes that the government proved by a preponderance of the evidence that the Defendant committed aggravated battery with a deadly weapon, in violation of Fla. Stat. § 784.045. A battery was committed when the Defendant intentionally struck his wife's car, against his wife's will, with a deadly weapon - the Defendant's white Mercury sedan.

Florida law provides that a person commits aggravated battery if they intentionally or knowingly cause great bodily harm, permanent disability or permanent disfigurement while committing a battery[1], *or* they use a deadly weapon in the commission of a battery. Fla. Stat. § 784.045(1)(a) (2010). Because an "intimate

---

[1] A battery occurs when a person actually and intentionally touches or strikes another person against the will of the other, or intentionally causes bodily harm to the other. Fla. Stat. § 784.03 (2010).

connection" exists between a car and its driver, an intentional ramming of one car into another is a battery when there are drivers behind the wheels of both cars. *See Wingfield v. State,* 751 So. 2d 134, 135 (Fla. 2nd DCA 2000) (finding that an intimate connection existed between a police officer and the car in which he was seated, because the officer rested his full weight on the cruiser's seats). Any instrument a person uses to inflict a blow may be a deadly weapon, if it is likely to produce death or great bodily harm. *Williamson v. State*, 92 Fla. 980, 984 (Fla. 1926). An automobile may thus constitute a deadly weapon. *Id.* at 985; *e.g., City of Coral Springs v. A 1997 Ford Ranger Pickup Truck*, 803 So. 2d 847, 851 (Fla. 4th DCA 2002).

On this record, the Defendant committed a battery against Ms. Morris when he struck the driver's side door of her sports utility vehicle with his sedan, because an intimate connection existed between Ms. Morris and her car at the time of her accident. Even if the Defendant only meant to get his wife's attention, as incredible as that may be, it is largely uncontested that the Defendant intentionally used his sedan to inflict a blow upon his wife's vehicle, and that Ms. Morris personally experienced the impact of the blow.

The blow inflicted by the Defendant's sedan was likely to produce death or great bodily harm to Ms. Morris or a third party. At the time of their collision, both the Defendant and Ms. Morris were operating their cars at rapid speed, at about fifty miles per hour, a speed at which any collision would be dangerous. Although Ms. Morris was very fortunate that no eastbound traffic existed along 183rd street at the exact time and location of her crash, the result of the action could have been very different had

there been cars traveling in the eastbound lanes, as was typical for that time of day. Ms. Morris' SUV may well have collided with a car as she flipped across the oncoming lanes of traffic, causing death or serious bodily harm. Alternatively, an eastbound traveler may have swerved in an attempt to avoid the rolling SUV, leading to a separate accident that may have resulted in death or great bodily harm.

Apart from Ms. Morris' good fortune, the intentional blow struck by her husband's sedan likely could have produced death or at the very least, great bodily harm to Ms. Morris or a third party. The injuries she could have sustained from her car rolling multiple times are severe, and the possibilities become increasingly grave when involvement of a third, eastbound car is considered.

Because the Court finds that an "intimate connection" existed between Ms. Morris and her sports utility vehicle, the Defendant's intentional act of driving his sedan into that sports utility vehicle, with enough force to send his wife's vehicle across a median and to cause her vehicle to flip multiple times, constitutes aggravated battery with a deadly weapon.

C.   *The Defendant Left the Scene of a Crash with Injuries*

We also find and conclude that the government proved by a preponderance of the evidence that the Defendant left the scene of a crash with injuries in violation of Florida law. Florida statutes provide that the driver of any vehicle involved in a crash that results in injury must immediately stop the vehicle at the scene of the crash, or as close to it as possible, and must remain at the scene until he or she has fulfilled the requirements of § 316.062, which include providing basic contact information and

arrangements for medical attention if needed.² Fla. Stat. § 316.027(1)(a) (2010). Criminal liability under § 316.027 requires proof that the driver charged with leaving the scene either knew of the resulting injury or death or reasonably should have known from the nature of the accident. *State v. Mancuso*, 652 So. 2d 370, 372 (Fla. 1995).

The underlying facts show that the Defendant had been driving alongside his wife for a period of time before the accident occurred. By his own admission, the Defendant was driving after his wife, and then swerved into her to get her attention. After being Mirandized, the Defendant conceded to told Detective Ferguson that he swerved into his wife's vehicle in order to get her attention, and that he left in a panic because he did not have a driver's license. His wife's whereabouts were therefore a priority of his in the moments just before, during, and after their collision. It is hence

---

² See Fla. Stat. § 316.062(1) (2010) ("The driver of any vehicle involved in a crash resulting in injury or death of any person or damage to any vehicle or other property which is driven or attended by any person shall give his or her name, address, and the registration number of the vehicle he or she is driving, and shall upon request and if available exhibit his or her license or permit to drive, to any person injured in such crash or to the driver or occupant of or person attending any vehicle or other property damaged in the crash and shall give such information and, upon request, exhibit such license or permit to any police officer at the scene of the crash or who is investigating the crash and shall render to any person injured in the crash reasonable assistance, including the carrying, or the making of arrangements for the carrying, of such person to a physician, surgeon, or hospital for medical or surgical treatment if it is apparent that treatment is necessary, or if such carrying is requested by the injured person."); § 316.062(2) ("In the event none of the persons specified are in condition to receive the information to which they otherwise would be entitled under subsection (1), and no police officer is present, the driver of any vehicle involved in such crash, after fulfilling all other requirements of § 316.027 and subsection (1), insofar as possible on his or her part to be performed, shall forthwith report the crash to the nearest office of a duly authorized police authority and submit thereto the information specified in subsection (1)."); *but see* § 316.062(3) ("The statutory duty of a person to make a report or give information to a law enforcement officer making a written report relating to a crash shall not be construed as extending to information which would violate the privilege of such person against self-incrimination.").

implausible on this record to support the Defendant's contention that he did not notice his wife's accident.

Indeed the impact was substantial enough to send his wife's large sports utility vehicle careening across a median and three traffic lanes, and flip multiple times in the process. His own car suffered physical damage that alone suggests that the Defendant would have been aware of the impact.[3] Finally, the Defendant admits that he panicked once he realized he did not have his license; compelling evidence that he understood the gravity of his situation.

Even if we accepted Defendant's argument that he did not actually witness his wife's SUV rolling, an assumption that strains credulity, the Defendant reasonably should have known from the nature of the accident that injuries could have resulted. He crashed into his wife's car as they both were driving at rapid speed and must have seen that his wife lost control of her vehicle as a result. After all, she was no longer travelling alongside him. And because the Defendant must have witnessed his wife's car cross over to the median, he reasonably should have known that injuries could have resulted as she traveled across the wrong side of the highway at a high speed. If the Defendant witnessed his wife's car roll over multiple times, he reasonably should have known that injuries could have resulted from the nature of the crash. Finally, even if the Defendant did not personally witness the result of their collision, or chose instead to switch his attention to the road ahead, the force of the impact combined with the fact

---

[3] See Government Exhibits 3B and 3C, which depict substantial physical damage to the driver's side door of the Defendant's white Mercury sedan.

that his wife's car was no longer traveling alongside him, indicate that he still reasonably should have known that injuries could have resulted from their collision.

It is uncontested that the Defendant continued driving westward after the collision, and that he was apprehended at a location over a twenty-minute drive from the accident scene. He did not stop to exchange information, and did not attempt to assist in obtaining any medical attention for the accident victim. While Fla. Stat. § 316.062(3) provides an exception to the requirement to extend information if that information would be self-incriminating, there is no such exception for stopping or rendering basic aide, which the Defendant failed to provide. It is therefore concluded that the Defendant violated this condition of his supervised release by willfully leaving the scene of an accident with known or foreseeable injuries.

### D.     *The Defendant Admitted to Reckless Driving*

Finally, the Court finds and concludes that the government proved by a preponderance of the evidence that the Defendant drove recklessly in violation of Florida traffic laws. Indeed, the Defendant plead guilty to this charge in the state court proceedings that gave rise to this matter, as evidenced by the certified copy of the judgment introduced as evidence at the hearing.

Any person who drives a vehicle in a willful or wanton disregard for the safety of persons or property is guilty of reckless driving. Fla. Stat. § 316.192(1)(a) (2010)[4]; *Lewek v. State*, 702 So. 2d 527, 530 (Fla. 4th DCA 1997) ("Reckless driving is defined

---

[4] For purposes of this statute, "willful" means "intentionally, knowingly and purposefully," and "wanton" means with a "conscious and intentional indifference to consequences and with knowledge that damage is likely to be done to persons or property. *See* Fla. Std. Jury Instr. for reckless driving under § 316.192.

as driving with a willful or wanton disregard for safety."). Recklessness is a degree of negligence that falls short of culpable negligence, but is more than a mere failure to use ordinary care. *Berube v. State*, 6. So. 3d 624, 625 (Fla. 5th DCA 2008) (quoting *McCreary v. State*, 371 So. 2d 1024, 1026 (Fla. 1979)).

Apart from his guilty plea, the record here shows that the Defendant intentionally swerved into his wife's car in order to get her attention, while the two vehicles were traveling at high speeds through an area usually characterized by heavier traffic. While speeding alone is usually insufficient to prove reckless driving[5], there were a number of other factors or circumstances present at the time of the Defendant's collision. These include (1) that it was a clear, dry day with good visibility; (2) that there were no obstructions present on the road; (3) that the Defendant was traveling on a highway described by a witness as typically characterized by heavier traffic; (4) that the Defendant failed to reduce the speed of his vehicle before or after striking his wife's car; and (5) that the Defendant intentionally collided with his wife's car during dangerous circumstances.

These factors and circumstances prove by the preponderance of the evidence that the Defendant drove his vehicle in willful and wanton disregard for his wife's safety and property. He intentionally, knowingly, and purposefully drove his car into his wife's car with a conscious and intentional indifference to consequences, and with knowledge that damage was likely to result.

---

[5] *See, e.g. State v. Lebron*, 954 So.2d 52, 55 (Fla. 5th DCA 2007); *Hamilton v. State*, 439 So. 2d 238, 238-39 (Fla. 2nd DCA 1983).

### E.    *Evidentiary Rulings*

The Court's evidentiary rulings at the hearing fully support the Court's findings. We explain them briefly.  The victim's statements to Officer LaFrance constitute admissible testimony because the statements fall under the excited utterance exception provided by Fed. R. Evid. 803(2), and are reliable.[6]  Ms. Morris's statements to Officer LaFrance directly related to her car crash, and were made while Ms. Morris was still under stress caused by the accident.  Officer LaFrance arrived at the scene barely ten minutes after the crash occurred, and began taking statements while rescue was still administering to Ms. Morris.  Officer LaFrance enquired whether Ms. Morris knew the driver of the white vehicle, and Ms. Morris responded that the driver was her husband, who was trying to kill her.  The totality of the circumstances, including a short lapse of time combined with Ms. Morris being in the midst of initial treatment, determine that her statements to Officer LaFrance were excited utterances.

---

[6]    In order to admit hearsay testimony in a revocation hearing, the court must find that the hearsay statement is reliable. *United States v. Robinson*, 2011 U.S. App. LEXIS 10772, *4 (11th Cir. Fla. May 25, 2011) (quoting *United States v. Frazier*, 26 F.3d 110 (11th Cir. 1994)).  In addition, the Federal Rules of Evidence provide a hearsay exception for excited utterances under Fed. R. Evid. 803(2). *Fed. R. Evid.* 803(2) (providing that a hearsay statement is admissible if it is one "relating to a startling event or condition made while the declarant was under the stress or excitement caused by the event or condition."); *See United States v. Robinson* at *5. While the declarant must still be under the stress or excitement that the startling event caused, the excited utterance need not be made contemporaneously to the startling event. *United States v. Belfast*, 611 F.3d 783, 817 (11th Cir. 2010).  It is the totality of the circumstances not simply the length of time that passed between the event and the statement, that determines whether a hearsay statement was an excited utterance.  *Id.*

Moreover, Ms. Morris' original statements are especially significant since recantations by domestic violence victims are common,[7] and she and her husband have a history that suggests domestic violence.[8]

Likewise, the victim's statements to Detective Ferguson are admissible. These statements fall under the excited utterance exception in Fed. R. Evid. 803(2), and meet the reliability requirement of *United States v. Frazier* for the same reasons applicable to Ms. Morris's conversation with Officer LaFrance. Ms. Morris's statements to Detective Ferguson directly related to her car crash, and were made while she was still under the stress caused by it. When Detective Ferguson arrived, Ms. Morris appeared visibly shaken, and her posture suggested physical pain. She braced herself against the opened door of her sports utility vehicle, and told Detective Ferguson that she was unable to move from that position. Although some time had passed between the car crash and her conversation with Detective Ferguson, Ms. Morris clearly remained under the stress the accident had caused. She remained at the scene, next to her car, clearly still affected by the crash. Given the totality of the circumstances, Detective Ferguson's testimony concerning Ms. Morris's statements is admissible as an excited utterance.

---

[7]  *See United States v. Robinson* at \*2-\*4 (explaining that it is common for female domestic violence victims to recant their accusations, and that their initial responses are more accurate and reliable than later recantations, which are often the products of duress and fear).

[8]  In July 2010, police were called to the home belonging to the Defendant and Ms. Morris, after the Defendant broke pieces of furniture during an altercation. Additionally, the couple got into a fight the night before their February 28th car accident.

F.  *<u>No Evidence Supports the Suspended License Charge</u>*

No evidence was introduced at the hearing relating to the final allegation in the petition based upon a charge of driving with a suspended license.  As a result, the Court does not recommend that the supervised release should be affected or revoked based on this ground.  Ultimately, of course, that is irrelevant given the findings set forth above as to the other grounds in the petition that support revocation of supervised release.

### IV.  CONCLUSION

Based upon the foregoing record, it is hereby **RECOMMENDED** that the Court revoke the defendant's supervised release based on the undersigned's findings that the government proved violation number one, violation number two, and violation number three of the pending petition.

The parties have fourteen (14) days from the date of this Report and Recommendation within which to serve and file written objections, if any, with the Honorable K. Michael Moore, United States District Court Judge.  Failure to file objections timely shall bar the parties from attacking on appeal the factual findings contained herein.  *LoConte v. Dugger*, 847 F.2d 745 (11th Cir. 1988), *cert. Denied*, 488 U.S. 958 (1988); *RTC v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 28th day of June, 2011.

                                                 /s/  *Edwin G. Torres*
                                                 EDWIN G. TORRES
                                                 United States Magistrate Judge